CENTRAL ARKANSAS & EASTERN RAILWAY COMPANY *v.* GOELZER.

Opinion delivered December 13, 1909.

1.  RAILROADS—LIABILITY FOR FIRES—VALIDITY OF STATUTE.—The act of April 18, 1907, making railroad corporations liable in damages for loss of or injury to any property by fire, caused by operation of trains, is a valid statute. (Page 572.)

2. SAME—FIRE—SUFFICIENCY OF EVIDENCE.—In an action against a railroad company to recover damages for destruction of plaintiff's property by fire alleged to have started from defendant's locomotive, evidence that sparks of fire were seen flying from defendant's locomotive towards plaintiff's property just before the property was burned, and that there was no other explanation of the fire, was sufficient to justify the jury in inferring that the fire was caused by sparks from defendant's engine.    (Page 572.)

3. EVIDENCE—SIMILAR FACTS.—Where it was in dispute whether defendant's engine could emit sparks, testimony of witnesses that they had seen it do so two or three weeks prior to the time of the fire alleged to have been caused by such engine was competent. (Page 573.)

4. SAME—QUALIFICATION OF EXPERT.—Where a witness, offered to prove the reasonableness of an attorney's fee in a case, testified that he had discussed the matter with "other attorneys" and was familiar with the customary fees in such cases, he was competent.    (Page 573.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

### STATEMENT OF THE COURT.

On February 12, 1909, A. H. Kaufman and I. S. Kaufman, partners as Kaufman & Company, brought suit in the Lonoke Circuit Court against the Central Arkansas & Eastern Railway Company, alleging that said railway company, while operating a locomotive over its line of railroad, negligently set fire to their barn containing corn and other products, and that the same was destroyed by the fire.    They asked judgment in the sum of $513.

On the same day George Goelzer instituted a similar suit against the defendant railway company, and asked judgment for $599.20.

The defendant answered in each case, and denied all liability.

By consent the cases were consolidated and tried together.

The facts, according to the plaintiff's witnesses, briefly stated, are as follows:

The barn burned consisted of some stables and two cribs with a hallway between six feet wide.    Both of the cribs were filled with corn.    One was estimated to contain 700, and the other 600 bushels, which was worth 75 cents per bushel.    The barn was situated 53½ feet from the center of the track of

the defendant's railroad, and was destroyed by fire between 7 and 8 o'clock in the evening of November 19, 1908. The fire, when discovered, was in the roof of the barn on the side nearest to the railroad of the defendant company. The weather was dry, and it had been some time since any rain had fallen in that locality. The neighbors, who gathered there, were unable to put out the fire. They testify that the ground between the barn and the railroad was hard and clear except for few rows of popcorn. They did not discover any fire between the barn and the railroad. They say that the defendant company had only one locomotive on its line of railroad, and some of them stated that they had seen it emit sparks before the day the fire occurred. They estimated the time which elapsed from the passing of the engine to the occurrence of the fire variously from 15 to 20 minutes to one hour. They say that the engine was emitting sparks when it passed and one witness said that the sparks were going pretty high that evening, but were going at ordinary speed. The witnesses for the plaintiffs all say that the time at which the train usually left England was uncertain, but one witness testified that the train passed the place opposite where the fire occurred about 6:30 o'clock on the evening the barn was burned. Other witnesses stated that it passed 15 or 20 minutes before the fire was discovered, but do not remember the exact time.

The witnesses for the defendant say that the train left England about 6 o'clock, and that it would take it 8 or 10 minutes to run to the place where the fire occurred, and that the fire in question did not occur until after 8 o'clock P. M.

The engineer testified that he was burning coal the day the fire occurred; that the engine was equipped with a spark arrester, and was in proper running order; that the spark arrester would not let sparks out as large around as a lead pencil, and that they have no substance to them. That it was impossible for sparks to have been emitted, and to have been wafted 53 feet from the railroad track and then set fire to the barn.

The jury returned a verdict for $400 in the Goelzer case, and for $250 in the Kaufman & Company case. From the judgment rendered upon the verdict the defendant has appealed.

*T. C. Trimble,* for appellant.

The evidence was insufficient to show that the locomotive caused the fire.  98 Mo. App. 330; *Id.* 291; 121 Fed. 924; 85 N. Y. S. 497; 105 Ill. App. 25; 70 S. W. 999; 63 Ark. 686. It does not appear that the witness was qualified to express an opinion as an expert as to the value of the services of an attorney.  Ency. of Ev., vol. 2, 165; 6 Col. 56; 52 Mo. App. 1. If the witness be a lawyer, he must qualify as an expert.  Ency. of Ev., vol. 2, 170, note 12.

*Jas. B. Gray,* for appellees.

The jury were justified in drawing the conclusion that the fire was caused by sparks from the engine.  77 Ark. 436; 76 Ark. 132; 79 Ark. 12; 80 Ark. 292; 82 Ark. 3.

HART, J., (after stating the facts.)  The act of April 18, 1907, makes railroad corporations liable in damages for the loss of or injury to any property, which may be caused by, or result from, the operation of its train, and provides that in such action the railroad corporations may not  plead or prove as a defense thereto that the loss or injury was not the result of negligence or carelessness on the part of such defendant or its employees.  In the case of *St. Louis & San Francisco Rd. Co.* v. *Shore,* 89 Ark. 418, this act was held to be constitutional.

In the case at bar the principal contention of the defendant is that there is not sufficient evidence to support the verdict. It is true that in this case the engineer in charge of the locomotive alleged to have caused the fire testified unequivocally that the engine was properly equipped with a spark arrester, and was properly operated, and that in such condition it was impossible for sparks as large around as a lead pencil to be emitted from the engine, and that these sparks could not have been thrown 53 feet from the railroad tracks and have set fire to the barn.

On the other hand, plaintiff's witnesses were equally positive that sparks did come from the engine on the evening in question, and that they were flying high.  This testimony tended to contradict the engineer, and to show that sparks did come from the engine and fly through the air towards the barn.  The testimony on the part of the plaintiffs also tended to show that the fire occurred a short time after the engine passed; and there was no other explanation of the origin of the fire.

This was sufficient evidence from which the jury might have inferred that the fire was caused by sparks emitted from defendant's engine. *St. Louis Southwestern Ry. Co.* v. *Trotter,* 89 Ark. 273.

We cannot invade the province of the jury by attempting to pass upon the credibility of the witnesses and the inferences which the jury may have legitimately drawn from the evidence are conclusive upon us. We think the jury might have found, from all the facts and circumstances adduced in evidence, that the fire was caused by sparks emitted from defendant's engine, and therefore we will not disturb the verdict.

Counsel for defendant also insists that the testimony of plaintiff's witnesses to the effect that they had seen sparks flying from the engine within two or three weeks prior to the time of the fire was not competent. The witnesses had testified that defendant operated only one engine on its line of railroad, and we think this testimony was competent as tending to show that sparks were emitted from the engine, and thus contradict defendant's engineer.

Counsel for defendant also contends that the testimony of Joe Gates as to the attorney's fees was incompetent because he did not testify that he was a lawyer. The witness testified that $100 was a reasonable attorney's fees in each case. He stated that he had discussed the matter with "other attorneys" and was familiar with the customary prices in such cases. We think this was sufficient to enable him to testify on the question. The jury assessed a fee of $50 in each case.

We do not find any prejudicial error in the record, and the judgment is affirmed.